Filed 10/14/25  In re L.L. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re L.L. et al., Persons Coming Under the Juvenile Court Law. | B341035 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. Nos. 20CCJP01381G, 20CCJP01381H |
| Plaintiff and Appellant, | |
| v. | |
| G.L., | |
| Defendant and Appellant. | |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Juvenile Court Referee.  Affirmed; appeal dismissed.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Appellant.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

———————

The juvenile court declared L.L. (born in 2020) and M.L. (born in 2022) dependent children, finding mother physically abused the children's half sibling and father had engaged in domestic violence against mother that placed the children at risk of serious harm. The court removed the children from the parents' custody and declined to provide father reunification services under Welfare and Institutions Code section 361.5 based on his past felony conviction for abducting the children's older half sibling and removing her from the state.[1]

The Los Angeles County Department of Children and Family Services (Department) appeals the judgment to the extent the juvenile court dismissed two jurisdictional counts alleging father's abduction and concealment of the children's half sibling placed them at risk of serious harm. As the Department concedes, however, reversal of the challenged finding will have no practical effect on the juvenile court's jurisdiction because father does not challenge the sustained counts regarding domestic violence and mother did not appeal the sustained counts regarding her physical abuse of the children's half sibling. We therefore deem the Department's appeal moot and dismiss it accordingly. (See *In re D.P.* (2023) 14 Cal.5th 266, 276 ["A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to

———————

[1]     Statutory references are to the Welfare and Institutions Code, unless otherwise designated.

2

declare principles or rules of law which cannot affect the matter in issue in the case before it." ' "].)

Father appeals the court's order bypassing reunification services. While he concedes the undisputed evidence established he willfully abducted the children's older half sibling from her placement and refused to disclose the girl's whereabouts (see § 361.5, subd. (b)(15)), father argues the juvenile court failed to consider the appropriate factors in determining whether reunification would be in the children's best interests (see § 361.5, subd. (c)(2)). The record does not support father's contention. We affirm the order.

## BACKGROUND

The family's current dependency case stems from a May 2024 incident in which mother reportedly struck the children's seven-year-old half sibling J.S. with a hanger. Mother has an extensive child welfare history, largely involving substance abuse and domestic violence. In 2013, her parental rights over two other half siblings were terminated. In February 2016, she lost her parental rights over another half sibling. And, in October 2016, she lost her parental rights over a fourth half sibling.

In August 2020, L.L. was declared a dependent child based on sustained allegations that father had been charged with human trafficking of a minor (Pen. Code, § 236.1, subd. (c)); father had a history of domestic violence against mother; and father had a history of mental and emotional disorders that rendered him incapable of providing regular care for the child. In February 2021, the juvenile court ordered L.L. placed with mother on the condition that she obtain a restraining order against father. Mother obtained a three-year restraining order the next month. In November 2021, the juvenile court

3

terminated its jurisdiction, granting sole legal and physical custody to mother, and restricting father to monitored visits with L.L.

In April 2023, L.L. and M.L. were declared dependent children based on sustained allegations that mother had physically abused L.L. and half sibling J.L and that father had a history of domestic violence, mental health problems, and a pending criminal charge for human trafficking. In November 2023, the juvenile court released the children to mother's custody and terminated jurisdiction. The exit order granted mother legal and physical custody of L.L. and M.L. and restricted father to monitored visitation with the children. Father's compliance with his court-ordered case plan had been "insubstantial."

As for the current dependency case, in July 2024, the Department filed a first amended petition adding counts against father. The new counts alleged father and mother had a history of violent physical and verbal altercations in the children's presence; father and mother violated the restraining order entered in connection with L.L.'s earlier dependency case; and father had felony convictions for child stealing (Pen. Code, § 278) and attempting to dissuade a victim/witness from prosecuting (*id.*, § 136.1). With respect to the count regarding father's criminal history, the petition alleged father had arranged for the children's half sibling J.A. to abscond from her foster care placement and leave the state without permission. The count further alleged that father had refused to disclose J.A.'s whereabouts or to return her to her placement.

Father admitted he did not participate in his earlier dependency cases, claiming he " 'felt attacked.' " He acknowledged there was domestic violence, but said mother

4

was always the aggressor and denied ever harming her. He nonetheless felt he was "still held accountable" and claimed he did not oppose the restraining order because he wanted to see L.L. returned to mother. He said he had not visited with the children for seven or eight months and blamed mother for " 'manipulat[ing] the system.' "

Father said his criminal case and felony convictions stemmed from his minor daughter J.A. (the children's half-sister) making false allegations that he allowed her to appear in pornographic material on the Internet. He explained it was his daughter's 20-year-old boyfriend who had solicited her to make the material and that when he learned of it, he arranged to fly his daughter to her mother's home in Texas to get her away from the boyfriend. He said this resulted in his daughter making the false allegations against him, which led to the human trafficking charges. He added that a jury acquitted him of those charges after his daughter testified that he was not aware of or involved in her making the material. And, while he was convicted of removing his daughter from her foster care placement and flying her out of the state without permission, father claimed the criminal court granted him a "military diversion."

Father's criminal court records confirmed he was convicted of child stealing and attempting to dissuade a witness from prosecuting but was acquitted of the human trafficking charges. A senior case manager with the veterans treatment court explained that father was participating in an 18-month veteran's treatment program—not military diversion—designed to address his substance abuse and mental health issues. She reported father's felony convictions could be reduced to misdemeanors or dismissed if he completed the program. Father's probation

5

officer reported that father had been granted three years' probation. He had been participating "well in groups" and drug testing as directed. The group session leader said the sessions "touch on anger management, coping skills, substance use, and domestic violence." He explained that father tended to exhibit " 'obsessiveness' " around certain topics and was " 'consumed with' " his " 'children and [the] criminal court case.' "

Father testified on his own behalf at the adjudication hearing. He denied there had ever been domestic violence between himself and mother and explained that he had no need to address domestic violence in counseling because he had "never been convicted" of that charge. While he acknowledged he faced child kidnapping charges, he asserted he had been "falsely accused by three [police] officers who since took early retirement." He added that the criminal court judge who sentenced him "understood" his daughter "should have never been in [the dependency system]," so the court "granted [him] military diversion to make it right for what the officers had done." He also claimed the criminal court judge recognized "there was no domestic violence" and father had only a "parenting issue."

The juvenile court sustained the counts regarding the parents' domestic violence, declared the children dependents, and dismissed the remaining counts related to father's mental health and criminal convictions.[2] Despite father's denials, the court

---

[2] Mother pled no contest to the endangerment counts related to her physical abuse of the children's half sibling. With respect to father's criminal convictions, the court found insufficient evidence of a nexus between the conduct and a current risk to the children. Although arranging for his teenage

found there was compelling evidence of domestic violence in the earlier dependency cases.  Because father had "never addressed domestic violence previously" and denied that it ever occurred, the court found the children faced a current risk of harm.

The juvenile court removed the children from the parents' custody, ordered reunification services for mother, and bypassed reunification services to father.  The court determined father's felony conviction for child stealing plainly established the predicate for bypassing services under section 361.5, subdivision (b)(15) and father had failed to meet his burden to prove reunification would otherwise be in the children's best interests.  Because father had refused to comply with his case plan in the children's earlier dependency cases and he continued to deny responsibility in his testimony at the adjudication hearing, the court found there was no "legitimate" reason to believe he would successfully regain custody if services were extended to him in this case.  While father's evidence suggested he was meeting the terms of his probation, it lacked sufficient "specificity" to satisfy the court that father would complete the services required to ensure the children could be safely returned to his custody.

Father filed a timely notice of appeal from the disposition order.

---

daughter to be removed from her placement and flown to her mother's home in Texas was criminal, the court reasoned the younger children (whose mother resided in California) were differently situated and there was insufficient evidence to sustain a finding that father would engage in similar conduct with them. The court likewise found insufficient evidence that father currently suffered from a mental illness that rendered him incapable of caring for the children.

7

## DISCUSSION

A juvenile court is generally required to order reunification services for a parent "whenever a child is removed" from that parent's custody. (§ 361.5, subd. (a); see *In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1271 (*Jayden M.*); *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.) However, in certain statutorily enumerated circumstances, our Legislature has authorized the juvenile court to "bypass" reunification efforts when it determines extending services to a parent would not be " 'in the best interest of the child.' " (*Jayden M.,* at p. 1271; § 361.5, subds. (b) & (c)(2); see *In re A.E.* (2019) 38 Cal.App.5th 1124, 1141.) "Consonant with the general presumption in favor of mandatory reunification services, the bypass provisions are 'narrow in scope' and reach situations where ' "the likelihood of reunification" ' is ' "so slim" ' due to a parent's past failures that 'expend[ing]' the Department's ' "scarce" ' resources on reunification services is likely to be 'fruitless,' or when 'attempts to facilitate reunification' would otherwise not 'serve and protect the child's interest.' " (*Jayden M.,* at p. 1271; *Baby Boy H.*, at pp. 474, 478.) "By making the grant of reunification services discretionary in these situations, the bypass provisions aim to 'focus reunification efforts' and resources on the cases 'most likely to succeed' with reunification." (*Jayden M.,* at p. 1271; *In re Joshua M.* (1998) 66 Cal.App.4th 458, 471.)

In this case, the juvenile court bypassed reunification services for father under section 361.5, subdivision (b)(15). Under this provision, reunification services "need not be provided to a parent" if the juvenile court "finds, by clear and convincing evidence," that "the parent or guardian has on one or more occasions willfully abducted the child or child's sibling or

8

half sibling from their placement and refused to disclose [their] whereabouts" or "refused to return physical custody" to either "their placement" or "to the social worker." (§ 361.5, subd. (b)(15).) When the bypass provision applies, the court "shall not order reunification for a parent . . . unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).)

When read as a whole, section 361.5 establishes "a two-step, burden-shifting procedure for bypassing reunification services." (*Jayden M., supra,* 93 Cal.App.5th at p. 1272.) "In the first step, the Department bears the burden of proving by clear and convincing evidence" that the bypass provision applies. (*Ibid.*) "In the second step, which presupposes the Department has carried its initial burden, the burden shifts to the parent to prove that it is in the child's best interest for the juvenile court to exercise its discretion to provide reunification services." (*Ibid.*)

In exercising its discretion under the bypass provisions, "the court may consider a variety of factors relevant to the child's best interest, including (1) the parent's ' " 'current efforts and fitness,' " ' (2) the parent's ' " 'history,' " ' (3) the ' " 'gravity of the problem' " ' that led to the assertion of dependency, (4) the ' "strength of the bonds" ' between the child and the parent and between the child and the current caregiver, and (5) the ' " 'child's need for stability and continuity.' " ' " (*Jayden M., supra,* 93 Cal.App.5th at pp. 1272–1273, quoting *In re G.L.* (2014) 222 Cal.App.4th 1153, 1164 (*G.L.*).) "One factor that is essential—and hence necessary—to the assessment of a child's best interest is whether there is ' "some 'reasonable basis to conclude' " ' that reunification is possible; if it is not, offering reunification services that are destined to fail is not in the child's

9

best interest." (*Jayden M.,* at p. 1273; accord *G.L.,* at p. 1164; *In re William B.* (2008) 163 Cal.App.4th 1220, 1228–1229 (*William B.*) ["[A]t least part of the best interest analysis must be a finding that further reunification services have a likelihood of success. In other words, there must be some 'reasonable basis to conclude' that reunification is possible before services are offered to a parent who need not be provided them."].)

Father does not dispute that his criminal conviction for child stealing satisfied the Department's initial burden of proving section 361.5, subdivision (b)(15) authorized the court to bypass reunification services. However, he argues the court erred on the second prong of the analysis by failing "meaningfully [to] focus on the minors' best interests, and whether they would benefit from [his] participation in family reunification services." (See § 361.5, subd. (c)(2).)

"A juvenile court has broad discretion when determining whether . . . reunification services would be in the best interests of the child under section 361.5, subdivision (c). [Citation.] An appellate court will reverse that determination only if the juvenile court abuses its discretion." (*William B., supra,* 163 Cal.App.4th at p. 1229; *G.L., supra,* 222 Cal.App.4th at pp. 1164–1165.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

The record plainly supports the juvenile court's decision, and father has not shown that his evidence compelled a different determination or that the court's conclusion exceeded the bounds

of reason.  Critically, once the juvenile court determined the bypass provision applied (a determination that father does not dispute), the burden shifted *to father* to prove, by *clear and convincing evidence*, that extending reunification services to him would still advance the children's best interests, notwithstanding his felony conviction for child stealing.  (See § 361.5, subd. (c)(2) [if a parent is subject to a bypass provision, the court "*shall not order reunification* for [the] parent . . . *unless* the court finds, by clear and convincing evidence, that reunification is in the best interest of the child" (italics added)]; *Jayden M., supra,* 93 Cal.App.5th at p. 1272.)  Father simply ignores this statutory framework and instead argues the court erred by offering— what he contends were—insufficient reasons to support its determination.  His premise is fatally flawed.

When a bypass provision applies, the burden does not rest with the juvenile court to give sufficient reasons to support its best interest determination, because *the Legislature*—in crafting the bypass provisions—has already made the determination that a child stealing conviction (or any of the other enumerated circumstances set forth in section 361.5, subdivision (b)) is sufficient reason *alone* to find that reunification services should not be offered to an offending parent.  As our Supreme Court has explained, " '[o]nce it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources.' " (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744.)  In this circumstance, "[t]he burden is on the parent *to change* that assumption and show that reunification would serve the best interests of

11

the child," notwithstanding the parent's past misconduct. (*William B., supra,* 163 Cal.App.4th at p. 1227, italics added.)

Father relies on *William B.* The case is instructive, but not in a way that helps father. The children in *William B.* (a nine-year-old and a five-year-old) had been removed from the parents' custody for a third time when the case came to the reviewing court. (*William B., supra,* 163 Cal.App.4th at p. 1223.) The juvenile court had determined the bypass provision set forth in section 361.5, subdivision (b)(13) applied, finding "by clear and convincing evidence that both parents had a history of chronic drug use and had resisted court-ordered treatment for the problem." (*William B.*, at pp. 1226–1227.) Nevertheless, the court found extending services to mother was in the children's best interests because "the boys had both testified they loved her and wanted to be with her." (*Id.* at p. 1226.) This was an abuse of discretion. (*Id.* at p. 1229.) The relevant bypass provision reflected " 'a legislative determination that an attempt to facilitate reunification between a parent and child generally is not in the minor's best interests when the parent is shown to be a chronic abuser of drugs who has resisted prior treatment for drug abuse.' " (*Id.* at p. 1228.) Under the prescribed statutory framework, the juvenile court could not set aside that legislative determination without clear and convincing evidence that afforded it "some 'reasonable basis to conclude' that reunification [was] possible before services [could be] offered to a parent who need not be provided them." (*Id.* at pp. 1228–1229.) Because there was "no substantial evidence to support the conclusion that [the children] [would] reunify with their mother," the juvenile court abused its discretion when it ordered reunification services

12

for a parent who was subject to the bypass provision.  (*Id.* at p. 1229.)

Section 361.5, subdivision (b)(15) reflects a legislative determination that it generally is not in a child's best interest to facilitate reunification with a parent who—like father—has violated court orders and endangered the child's half sibling by willfully abducting the half sibling from her placement and refusing to disclose her whereabouts.  Setting aside this legislative determination requires clear and convincing evidence that the offending parent will comply with future court orders issued to protect the child before services are offered to a parent whose misconduct otherwise disqualified him from receiving services.  (See § 361.5, subd. (b)(15); *William B., supra,* 163 Cal.App.4th at pp. 1228–1229.)  Here, in assessing the children's best interests in light of the bypass provision's undisputed application, the juvenile court correctly focused on father's past refusal to participate in services, his violation of the restraining order that had been issued to protect the children in their earlier dependency case, and his persistent denial of responsibility for domestic violence that endangered the children.  The court also reasonably assessed that father's evidence was too vague to satisfy the court that he would comply with future orders if it extended reunification services to him.  On this record, we cannot say the juvenile court abused its discretion by finding father's evidence insufficiently convincing to support a finding that reunification would be in the children's best interests.  (§ 361.5, subd. (c)(2).)

## DISPOSITION

The appeal by the Los Angeles County Department of Children and Family Services is dismissed as moot. The disposition order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, Acting P. J.

We concur:



ADAMS, J.



HANASONO, J.